Filed 2/27/23  P. v. Salcedo CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>              v.<br><br>HIRAM SALCEDO,<br><br>        Defendant and Appellant. | F082643<br><br>(Super. Ct. No. BF173870A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Kathryn L. Althizer, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

Twenty-year-old defendant Hiram Salcedo robbed Ana A. and attempted to rob John D.[1]  As to both offenses, he exhibited an imitation rifle.  A jury subsequently convicted defendant of second degree robbery (Pen. Code, § 212.5, subd. (c), count 1 (Ana)),[2] attempted second degree robbery (§§ 212.5, subd. (c), 664, count 2 (John)), and exhibiting an imitation firearm (§ 417.4, count 3 (Ana), count 4 (John)).[3]  The trial court subsequently sentenced defendant as a "Three Strikes" offender (§§ 667, subds. (a)(1), (b)–(i), 1170.12, subds. (a)–(d)) to an aggregate term of 60 years to life.

On appeal, defendant contends the prosecution failed to prove defendant's juvenile adjudication qualified as a strike prior because the record is silent as to whether the court found defendant to be a fit and proper subject to be dealt with in the juvenile system. Defendant further contends the trial court abused its discretion when it refused to dismiss his juvenile strike for second degree robbery because it failed to consider all relevant factors, including his young age, before making its determination.  Defendant further contends his aggregate sentence of 60 years to life constitutes cruel and/or unusual punishment in violation of both the federal and state Constitutions.  Lastly, defendant contends the trial court should have stayed his sentences as to counts 3 and 4 pursuant to section 654.  As to this final argument, the People concede error.

Although we conclude there was an implied finding that defendant was a fit and proper subject to be dealt with in the juvenile system, we find the trial court abused its discretion by weighing impermissible factors and ignoring relevant mitigating factors before denying defendant's motion to dismiss his prior strike offenses.  Accordingly, we will reverse the judgment and remand the matter for resentencing with instructions to the

---

[1]     Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names or initials.  No disrespect is intended.

[2]     All further references are to the Penal Code, unless otherwise stated.

[3]     As discussed below, defendant was convicted of other offenses.

trial court to reconsider his sentence in light of the views expressed in this opinion. Further, in light of the People's concession, we direct the trial court to stay defendant's sentences as to counts 3 and 4 pursuant to section 654.

## SUMMARY OF FACTS

### I.    The Robberies

On September 23, 2018, at approximately 1:20 p.m., Ana worked at a recycling center in Bakersfield when she was approached by a man, later identified as defendant, holding an imitation rifle in his pants and underneath his shirt.  Ana asked defendant, "'What is it that you want?'" and he pointed at the money she was holding in her hands. Ana was scared defendant "would point" the rifle at her and subsequently handed defendant between $130 and $160.  Defendant then took the imitation rifle out of his clothes and ran away.

At or near that time, Sierra M.[4] and her friend Austin B. observed defendant rob Ana.  After seeing this, Sierra told defendant to stop and began to chase after him. Defendant then turned around in a crosswalk, flashed the imitation rifle that was in his waistband, and took off running.  Defendant then ran up a staircase into an apartment.

At or around this time, John purchased chips and soda at a store.  Defendant came up to John and told him, "'You have my money.'"  Defendant then lifted up his shirt and exposed the stock of an imitation rifle he was carrying in his pants.  John was scared and immediately got into his vehicle, drove away, and then called 911.

### II.    Subsequent Law Enforcement Investigation

Kern County Detective R. Sorrow, a member of the SWAT team, responded and established a perimeter around the apartment where defendant had barricaded himself. During the standoff, Kern County Deputy D. Rickard located a black imitation rifle lying

---

**4**    On cross-examination, Sierra admitted to a 2019 felony conviction for child cruelty (§ 273a, subd. (a)).

on the grass. Defendant was eventually placed under arrest after a multiple hour standoff. Subsequently, Kern County Deputy R Pollack searched defendant and located $110 in cash in his pants. Pollack asked defendant his name and he falsely identified himself as another person. One that same day, Rickard interviewed Sierra, who identified defendant in a six-pack photograph lineup as the individual involved in the robbery.

## PROCEDURAL HISTORY

On July 8, 2020, a jury convicted defendant of second degree robbery (§ 212.5, subd. (c), count 1); attempted second degree robbery (§§ 212.5, subd. (c), 664, count 2); three counts of brandishing a replica firearm (§ 417.4, counts 3, 4, 5); delaying a peace officer (§ 148, subd. (a)(1)); and giving a false identification to a peace officer (§ 148.9, subd. (a)). At a subsequent court trial, the trial court concluded defendant suffered both a prior 2015 juvenile adjudication for robbery (§ 212.5, subd. (c)) and a prior 2017 adult conviction for criminal threats (§ 422), and both allegations could be used to enhance his sentence (§§ 667, subds. (a), (b)–(i), 1170.12, subds. (a)–(d)).

Subsequently, as to count 1, the trial court sentenced defendant to an indeterminate term of 25 years to life, plus an additional five-year term pursuant to section 667, subdivision (a). As to count 2, the trial court sentenced defendant to a consecutive indeterminate term of 25 years to life, plus an additional five-year term pursuant to section 667, subdivision (a). As to counts 3 through 7, the trial court sentenced defendant to 180 days in custody to be served concurrent to count 1. The trial court sentenced defendant to an indeterminate term of 50 years to life, plus a determinate term of 10 years, for a total term of 60 years to life.

## ARGUMENT

### I. There Was an Implied Finding of Fitness Pursuant to Section 667, Subdivision (d)(3)(C)

In his opening brief, defendant contends the People failed to prove defendant's prior juvenile adjudication qualified as a strike prior because there is "no evidence that

4.

[defendant] 'was found' to be a fit and proper subject to be dealt with under the juvenile court law during the proceedings that led to his juvenile adjudication for second degree robbery." In their response, the People cited our Supreme Court's decision in *People v. Davis* (1997) 15 Cal.4th 1096, which rejected this exact argument. (*Id*. at p. 1102 ["By its terms, [section 667,] subdivision (d)(3)(C) requires a finding, not an express finding, of fitness. Accordingly, nothing in the subdivision's language precludes the inclusion of implied as well as express findings of fitness."].) In his reply brief, defendant acknowledged *Davis* and agreed his argument is "at odds" with its holding, but argues *Davis* was wrongly decided. However, we are bound by *Davis* and therefore reject this argument. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

## II. The Trial Court Abused Its Discretion in Denying Defendant's Motion to Dismiss His Juvenile Strike Prior Because It Failed to Consider All Relevant Factors, Including Defendant's Age, Before Making Its Decision

Defendant further contends "the circumstances of this case are exceptional and the record plainly shows that the trial court abused its discretion in denying the *Romero*[5] motion." Specifically, defendant argues the aggregate sentence imposed was unjust and that the trial court abused its discretion in considering impermissible factors and ignoring relevant factors. We agree.[6]

### A. Additional Factual Background

On March 4, 2021, trial counsel filed a *Romero* motion arguing for dismissal of defendant's prior juvenile strike. Specifically, trial counsel argued dismissal was appropriate based on defendant's difficult upbringing, drug and alcohol addiction, and

---

[5] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

[6] Because we conclude the trial court abused its discretion in denying the *Romero* motion, we need not reach defendant's additional argument his sentence violates both the federal and state Constitutions' prohibition on cruel and/or unusual punishment. (*People v. Brown* (2003) 31 Cal.4th 518, 534 ["'It is well established that "we do not reach constitutional questions unless absolutely required to do so to dispose of the matter before us."'"].)

facts surrounding his two prior strikes. The People filed a response arguing defendant does not fall outside the spirit of the Three Strikes law. (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d).) The trial court considered the motions and arguments from counsel, and subsequently denied the motion to dismiss defendant's prior juvenile strike. Specifically, the trial court stated the following:

> "For purposes of this motion, the Court is familiar with the required analysis necessary for the Court to justify its exercised discretion.

> "*Romero* is a case that came about to allow courts to exercise discretion to determine whether individuals before them are within or outside the spirit of the three-strikes law for various reasons. Those reasons are factors that have been memorialized and that guide a court to determine the appropriate disposition involving whether to impose or to strike a prior conviction suffered by an accused.

> "One factor the Court must consider is the remoteness in time as it relates to the prior convictions compared to the instant offense.

> "In this case the Court recognizes that the date of the incident in this case was on or about September 23rd, 2018, and the defendant's prior strike convictions or adjudications were suffered in 2015 and 2017. To find that those strikes are remote in time would be vastly inconsistent with a reasonable person's interpretation of the timeline just outlined, and on that basis the Court cannot, in good conscience, find that the defendant's prior strike conviction and strike adjudication were remote in time when compared to the date of the instant offense before it.

> "When determining, however, whether a *Romero* motion is appropriate and to exercise discretion to strike a prior conviction to not let it affect the ultimate sentence pronounced, the Court must consider the nature of the crime involved, in addition to the nature of the defendant specifically.

> "When considering the nature of the crime, the Court is mindful of the evidence presented before a jury that ultimately led to the convictions suffered in this case.

> "The defendant was charged with and convicted of robbery. He was also charged with and convicted of attempted robbery, in addition to other

allegations. Those crimes in and of themselves portray violent conduct that indicated a danger to society.

"The defendant utilized and carried out those crimes while arming himself with a weapon. Even though it was not a firearm, it was an imitation firearm that served his purpose.

"In considering the nature of the crimes themselves, they are serious in nature to such an extent that they do have drastic ramifications to the society at large given the dangerousness of the defendant's conduct.

"When considering the nature of the defendant, however, the Court must consider information brought before it, which in this case includes information involving [defendant's] upbringing, the struggles, trials, and tribulations that he has experienced, his issues in dealing with drug addiction and alcohol addiction.

"The Court must also consider additional circumstances involving the defendant, such as the defendant's criminal history.

"What is striking to the Court is that by age 20, the defendant has accumulated 21 separate cases within the criminal justice system. Three of them resulted in juvenile adjudications, all of which were serious or violent allegations.

"[Defendant] suffered 17 misdemeanor convictions and one felony conviction as an adult which resulted in the strike in this case. He has had four violations of probation, 11 failure to appears, and at the time he was only 20 years old. That is a horrific criminal record for an individual, nonetheless an individual at such a young age.

"To a certain extent one can empathize with the defendant and the experience that he has accumulated at such a young age. One can also, however, consider the dangerousness and the nature of the convictions accumulated to discern and determine ultimately whether the defendant is an individual who the legislator had in mind when drafting the three-strikes law.

"It does not appear to the Court that based on the nature of the defendant alone that it would support a discretionary finding by this Court that the defendant is outside the spirit of the three-strikes law.

"While the law is what it is, and oftentimes in circumstances such as this, based on the instant allegations that resulted in convictions, when coupled with prior convictions such as what the defendant has accumulated,

7.

the ultimate term of punishment is something that is mandated by law, and that is a separate issue.

"For purposes of the *Romero* motion, the Court must consider the totality of the circumstances, including what the Court has articulated on the record specifically involving the nature of the crime itself, in addition to the nature of the defendant and specifically his criminal history.

"When considering all of that, it does not appear to the Court that the Court's discretion would be supported, based on the information directly before it, to find that the defendant is outside the spirit of the three-strikes law. [¶] … [¶]

"The determination for the Court in determining whether an individual is inside or outside the spirit of the three-strikes law does come down to the articulated factors that the Court has addressed on the record, irrespective of the ultimate sentence that one *might* receive given the Court's ultimate ruling." (Italics added.)

## B. Applicable Law

### i. The Three Strikes Law

"[I]f a defendant has two or more prior serious or violent felony convictions as defined in subdivision (d) that have been pled and proved, the term for the current felony conviction shall be an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence calculated as the greatest of: [¶] … [t]hree times the term otherwise provided as punishment for each current felony conviction subsequent to the two or more prior serious or violent felony convictions [or] [i]mprisonment in the state prison for 25 years." (§ 667, subd. (e)(2)(A)(i)–(ii).) The intent of the Three Strikes law is "'to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses.'" (*People v. Strong* (2001) 87 Cal.App.4th 328, 337, fn. omitted.) The Three Strikes law "was intended to restrict courts' discretion in sentencing repeat offenders" (*Romero, supra*, 13 Cal.4th at p. 528), and establishes a sentencing norm for longer sentences for repeat offenders, "carefully circumscrib[ing] the trial court's power to depart from this norm," requiring the trial court to explicitly justify its decision to depart from this norm.

8.

(*People v. Carmony* (2004) 33 Cal.4th 367, 378 (*Carmony*).) "In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Ibid*.)

However, our Three Strikes law has undergone significant changes since it was originally enacted in 1994. In 2012, voters passed Proposition 36 "'to restore the original intent of California's Three Strikes law—imposing life sentences for dangerous criminals like rapists, murderers, and child molesters.'" (*People v. Avila* (2020) 57 Cal.App.5th 1134, 1150 (*Avila*), quoting Voter Information Guide, Gen. Elec. (Nov. 6, 2012) text of Prop. 36, § 1, p. 105.) For individuals "whose current conviction is for a felony that is neither serious nor violent …, the defendant is to receive a second strike sentence of twice the term otherwise provided for the current felony, pursuant to the provisions that apply when a defendant has one prior conviction for a serious or violent felony." (*People v. Johnson* (2015) 61 Cal.4th 674, 681.)

The trial court retains jurisdiction to dismiss or strike one or more of a defendant's prior strike convictions, "subject, however, to strict compliance with the provisions of section 1385 and to review for abuse of discretion." (*Romero, supra*, 13 Cal.4th at p. 504.) The trial court must determine whether "in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*); see *People v. Strong, supra*, 87 Cal.App.4th at p. 336 [The "spirit" of a law refers to the general meaning or purpose of the law.].) The sentence imposed by the trial court is, also, itself a factor when deciding a defendant's prospects for committing future crimes because the defendant will have fewer opportunities to commit crimes while incarcerated. (*People v. Gaston* (1999) 74 Cal.App.4th 310, 315.) The defendant's sentence is in fact the

overarching consideration when deciding to strike a prior conviction allegation "because the underlying purpose of striking prior conviction allegations is the avoidance of unjust sentences." (*People v. Garcia* (1999) 20 Cal.4th 490, 500; see *id.* at pp. 501–502 (*Garcia*).)

### ii. Standard of Review

"We review a trial court's ruling on a *Romero* motion under the deferential abuse of discretion standard, which requires the defendant to show that the sentencing decision was irrational or arbitrary." (*Avila, supra*, 57 Cal.App.5th at p. 1140, citing *Carmony, supra*, 33 Cal.4th at pp. 375, 378.) "This pejorative boilerplate is misleading since it implies that in every case in which a trial court is reversed for an abuse of discretion its action was utterly irrational. Although irrationality is beyond the legal pale it does not mark the legal boundaries which fence in discretion." (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.) The Court of Appeal further explained: "Very little of general significance can be said about discretion. '"The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown. [Citation.]"' [Citations.] The scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action ….' Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion." (*Ibid.*)

### C. Analysis

Here, we conclude the trial court abused its discretion in failing to properly weigh relevant mitigating factors before denying defendant's motion to dismiss his prior juvenile strike. We find both *Avila, supra*, 57 Cal.App.5th 1134 and *People v. Dryden* (2021) 60 Cal.App.5th 1007 (*Dryden*) instructive. In *Avila*, the defendant was convicted in 2018 of attempted second degree robbery and attempted extortion after he demanded

10.

"rent" money from two sidewalk fruit vendors and subsequently squashed several bags of their oranges. (*Avila, supra*, at p. 1139.) The defendant admitted to three prior strike convictions: a second degree robbery and assault with a knife in 1990, and a second degree robbery in 1992. (*Id*. at pp. 1140–1141.) The trial court denied the defendant's *Romero* motion and sentenced him to 25 years to life plus 14 years. (*Avila, supra*, at p. 1139.)

The Second District, Division Three held the trial court abused its discretion because it incorrectly believed it could not consider the defendant's youth at the time he committed those prior offenses, 18 and 20 years of age respectively, as mitigating factors.[7] (*Avila, supra*, 57 Cal.App.5th at pp. 1141–1142.) The court concluded these facts weighed in favor of granting the *Romero* motion because the strikes "were … committed when [the defendant] was of diminished culpability based on his age" (*Avila, supra*, at p. 1145), and as to the underlying offense "[the defendant] did not use a weapon or otherwise use physical violence against the victims, nor did he make any specific threats. He squashed oranges." (*Id*. at p. 1142.) Lastly, the court reasoned the sentence imposed "means [the defendant] will likely die in prison," which is problematic because "[t]he length of a sentence is the 'overarching consideration' in deciding whether to strike a prior conviction because the underlying purpose of striking a prior conviction is the avoidance of unjust sentences." (*Id*. at p. 1144.)

Furthermore, in *Dryden*, the defendant was convicted of two counts of assault with a deadly weapon (*Dryden, supra*, 60 Cal.App.5th at p. 1013), which involved the defendant striking "two members of a group of five young men with a bamboo stick, scratching one and raising a welt on the neck of the other." (*Id*. at p. 1031.) The

---

**7**      The *Avila* court also held the trial court abused its discretion in failing to consider the remoteness of the prior strikes—two committed on a single occasion 28 years before the commission of the current offenses and one committed 26 years before. (*Avila, supra*, 57 Cal.App.5th at p. 1141.) As to this case, we agree with the trial court that defendant's prior strike offenses, from 2015 and 2017 respectively, were not remote in time.

defendant suffered three prior strike convictions: a 1989 conviction for residential burglary; a 2005 conviction for assault with a deadly weapon; and a 2007 conviction for residential burglary. (*Id*. at p. 1030.) The trial court denied the defendant's *Romero* motion and imposed a sentence of 25 years to life, consecutive to 15 years. (*Dryden, supra*, at p. 1016.) The Sixth District concluded the trial court abused its discretion in denying the *Romero* motion because "[t]he trial evidence shows that [the] defendant's criminal behavior here resulted from a late-night, spontaneous altercation between an intoxicated and mentally ill homeless person and a group of youths," "[t]he record does not support the trial court's conclusion that this nighttime encounter between [the] defendant and the young men outside two fast food restaurants was similar to [the] defendant's prior strikes which, …, were characterized by either substantial violence or the deliberate entry into homes to steal," and the defendant had a "'history of homelessness, mental health issues, and alcoholism [which] most likely contributed to his actions[.]'" (*Dryden, supra*, at p. 1031.)

Defendant contends the trial court abused its discretion in denying his *Romero* motion as he falls outside the spirit of the Three Strikes law because his "criminal history all occurred when he was a teenager and is far from 'horrific,'" the record surrounding his prior strike offenses is "trivial," and his "substance abuse addiction and criminal history are intertwined." Specifically, defendant argues the trial court failed to properly weigh these factors in support of his *Romero* motion. We agree. Although a denial of a *Romero* motion is reviewed for abuse of discretion, the "standard is neither 'empty' [citation] nor are all recidivists the kind of career criminals appropriately considered under that scheme … [and] an abuse of discretion may be found where a trial court considers impermissible factors, and, conversely, does not consider relevant ones." (*Avila, supra*, 57 Cal.App.5th at pp. 1140–1141.)

### i. The Nature and Circumstances of Defendant's Prior Strike Convictions

The trial court did not "consider whether, in light of the nature and circumstances of his … prior serious and/or violent felony convictions … [defendant is] deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams, supra*, 17 Cal.4th at p. 161.)  In making its ruling, the trial court simply stated, "[D]efendant's prior strike conviction and strike adjudication were [not] remote in time when compared to the date of the instant offense before it" and that "by age 20, the defendant has accumulated 21 separate cases within the criminal justice system[—t]hree of them resulted in juvenile adjudications .…"  Although the trial court referenced defendant's criminal history, it never considered the nature and circumstances of his prior serious and/or violent felony convictions, which it was required to do.  (*Ibid.*)

Specifically, as it relates to defendant's two prior strike convictions, neither offense was particularly egregious.  Defendant's juvenile strike occurred when defendant was 16 years old and involved him stealing several mini bottles of wine, and after being confronted by a security guard, pulled away, and struggled to get away from multiple security guards after they arrived on scene.[8]  This conduct constituted a prototypical *Estes*[9] robbery—a type of robbery objectively less egregious than the typical robbery where the force/fear and taking requirements occur simultaneously.  (See *Miller v. Superior Court* (2004) 115 Cal.App.4th 216, 223 [robberies in which force or fear is not used until after the perpetrator has already taken the loot "are commonly referred to as '*Estes* robberies'"].)  Defendant's second strike (§ 422 (criminal threats)) occurred in

---

[8]    The facts surrounding defendant's prior strike offenses are incorporated from the "People's Sentencing Statement and Response to Defendant's Motion to Strike One Strike Under *People v. Romero*."  (Some capitalization omitted.)  Defendant relied on the People's recitation of the facts in his opening brief.

[9]    *People v. Estes* (1983) 147 Cal.App.3d 23 (*Estes*).

2017 when defendant was 18 years old and involved him telling an assistant principal at a school, "'mother fucker, I'll kill you,'" while he simulated retrieving a firearm from his waistband. Although defendant's conduct constituted a threat of violence, the crime of criminal threats is a serious, not violent, crime for purposes of the Three Strikes law (see §§ 667.5, 1192.7, subd. (c)(38)).

### ii. The Nature and Circumstances of the Current Offenses

Additionally, the facts surrounding his current felonies were not particularly egregious. The trial court described both offenses as "violent conduct that indicated a danger to society" because "defendant utilized and carried out those crimes while arming himself with a weapon … an imitation firearm" and, therefore, "[i]n considering the nature of the crimes themselves, they are serious in nature to such an extent that they do have drastic ramifications to the society at large given the dangerousness of the defendant's conduct." On a spectrum of robbery offenses, defendant's robbery and attempted robbery offenses were not as violent, nor as serious as the trial court described. In this case, defendant approached Ana with an imitation rifle in his pants and underneath his shirt. Ana asked defendant what he wanted, and he pointed at money she was holding in her hands. Defendant then grabbed the money and ran away. He then walked up to John and told him, "'You have my money,'" lifted his shirt and exposed the stock of an imitation rifle he was carrying in his pants. John immediately got into his vehicle and drove away. As to both offenses, although defendant displayed an imitation firearm, he never pulled it out of his pants, and did not physically attack either Ana or John. No one suffered any material injury in connection with defendant's prior or current offenses.

### iii. Defendant's Youth

Further, the trial court failed to properly weigh defendant's background, character, and prospects before denying his *Romero* motion. (*Williams, supra*, 17 Cal.4th at p. 161.) It is significant defendant was 20 years old at the time of the current offenses and committed the prior strike offenses when he was 16 and 18 years old. As to

14.

defendant's young age, the trial court noted, "To a certain extent one can empathize with the defendant and the experience that he has accumulated at such a young age," but concluded, defendant had a "horrific criminal record for an individual, nonetheless an individual at such a young age." Defendant's age when he committed his strike offenses, although not dispositive, is plainly relevant to the nature and circumstances of his strike offenses and is to be considered as a mitigating factor. This is due to the prevailing trend recognizing that young adults are constitutionally different from adults for sentencing purposes because of their diminished culpability and greater prospects for reform. (See *In re Jenson* (2018) 24 Cal.App.5th 266, 276.)[10]

As is evident from the record, the trial court did not consider defendant's youth as a mitigating factor. Rather, the court improperly considered defendant's youth in a negative light and the fact he had such a "horrific criminal record … at such a young age" as an aggravating factor justifying imposition of his lengthy sentence. This was in direct conflict with the trend in the law requiring trial courts to weigh an individual's young age as a mitigating factor and constitutes an abuse of discretion. In turn, it deprived defendant at an early age of an opportunity to rehabilitate and reform his behavior. To exacerbate the effects of these errors as they relate to his youth, defendant's sentence as a third strike offender makes him ineligible for a youth offender parole hearing as discussed *post*.

---

**10**     For example, as it relates to youth offender parole hearings for inmates sentenced to life without the possibility of parole for crimes committed before age 18, "[t]he legislative history [regarding section 3051] suggests the Legislature was motivated by dual concerns: that lengthy life sentences did not adequately account for, first, the diminished culpability of youth, and second, youthful offenders' greater potential for rehabilitation and maturation." (*In re Williams* (2020) 57 Cal.App.5th 427, 434; see § 3051.) Recently, the Legislature passed Assembly Bill No. 124 (2020–2021 Reg. Sess.), which added subdivision (b)(6) to section 1170 and created a presumption that the trial court will impose the lower term under enumerated circumstances, such as where the offender's childhood trauma or youth were contributing factors in the offense. (§ 1170, subd. (b)(6)(B).) "A 'youth' for purposes of this section includes any person under 26 years of age on the date the offense was committed." (§ 1016.7, subd. (b).)

15.

### iv.    Defendant's Struggles With Alcohol and Drug Abuse

The trial court referenced defendant's drug and alcohol addiction, but did not state whether it was considering these circumstances as mitigating or aggravating factors.

Similar to how the law has evolved regarding its understanding and treatment of juvenile offenders, it has also evolved in how it treats drug users.  (See *People v. DeHoyos* (2018) 4 Cal.5th 594, 597 ["Proposition 47 … reduces many common theft- and drug-related offenses from felonies to misdemeanors for offenders who do not have prior convictions for specified violent or serious offenses."].)  According to defendant's *Romero* motion, defendant began using alcohol, marijuana, and methamphetamine at age 11, and began abusing alcohol at age 14.  Defendant's struggles with alcohol and drug use were corroborated by both the section 1368 report, wherein defendant stated he "considers himself an addict" and the probation report where he "admitted [to] being under the influence of both drugs and alcohol at the time of the offense."  Further, although unrelated to alcohol and drug use, defendant also had familial issues starting at age 11, and was shot in the leg at age 17 requiring both surgery and a hospital stay.

The trial court should have properly weighed both defendant's struggles with drugs and alcohol, along with his difficult upbringing before denying his *Romero* motion.

### v.    The Trial Court Failed to Consider the Total Sentence Imposed

The most concerning aspect of this case was the trial court's complete disregard for the extreme nature of the ultimate sentence imposed.  Our Supreme Court has expressly stated a defendant's sentence is in fact the overarching consideration when deciding to strike a prior conviction allegation "because the underlying purpose of striking prior conviction allegations is the avoidance of unjust sentences."  (*Garcia, supra*, 20 Cal.4th at pp. 500; see *id.* at pp. 501–502.)  Subsequent to the trial court's ruling, trial counsel reminded the court it had discretion to impose 25 years to life on one count, but dismiss the strike offenses as to the second count.  In addition, probation also recommended counts 1 and 2 be served concurrently because "it does not appear there

16.

was enough time between the two offenses," along with "the lack of injuries to either victim, the close proximity in time between the two counts and the use of a BB gun, rather than a more powerful and deadly firearm." However, the trial court, rather than giving any meaningful weight to these considerations or that defendant was effectively being sentenced to a life in prison, *ignored* the relevance and importance of the ultimate sentence and denied defendant's *Romero* motion, which by itself was an abuse of discretion. (*Garcia, supra*, at pp. 500, 501–502.)

The trial court's disregard for the ultimate sentence imposed is particularly concerning when considering the maximum sentences that could be imposed for the most egregious offenses. For example, the following offenses all have a lesser mandated sentence than what was imposed in this case: nonspecial circumstance first degree murder (§§ 187, subd. (a), 190, subd. (a) [25 years to life]); sexual intercourse or sodomy with a child 10 years of age or younger (§ 288.7, subd. (a) [25 years to life]); and continuous sexual abuse of a child under 14 years of age (§ 288.5, subd. (a) [6, 12, or 16 years]). As *Avila* stated, "[T]he changes suggest disproportionately in [the defendant's] sentence, one that even as a recidivist exceeds the punishment in California for second degree murder, attempted premediated murder, manslaughter, forcible rape, and child molestation." (*Avila, supra*, 57 Cal.App.5th at p. 1151.)

Lastly, to compound the errors in denying defendant's *Romero* motion, the trial court's decision to sentence defendant as a third strike offender rendered him ineligible for youth offender parole.[11] (§ 3051, subd. (h) [an individual is not entitled to a youth offender parole hearing in "cases in which sentencing occurs pursuant to

---

[11] Section 3051, subdivision (a)(1) states, "A youth offender parole hearing is a hearing by the Board of Parole Hearings for the purpose of reviewing the parole suitability of any prisoner who was 25 years of age or younger, or was under 18 years of age … at the time of the controlling offense."

Section 1170.12, subdivisions (b) to (i), inclusive, of Section 667 [Three Strikes]".)[12] This unjust decision placed defendant in a worse position than that of a first degree murderer. (§ 3051, subd. (h); see *In re Woods* (2021) 62 Cal.App.5th 740, 752 ["The statute thus provides relief to youthful offenders who commit first degree murder and are sentenced to 25 years to life"].)

Nonetheless, the People contend defendant's "criminal history, background, and future prospects were presented to the trial court, and nothing indicates that the trial court failed to properly consider them" and that defendant "has failed to show that the trial court failed to consider permissible factors in declining to strike or acted so irrationally or arbitrarily that no reasonable person could agree with its denial of *Romero* relief." We disagree. The People rely primarily on cases in their opening brief that are over 20 years old.[13] These cases are unpersuasive because they were decided far before our Legislature and courts began reexamining our sentencing regime. Further, the People argue, that as to the trial court's comments regarding the length of defendant's overall sentence, "the trial court was simply stating that it could not forgo its previous analysis of all factors simply because of the length of [defendant's] overall sentence," which "finds support in the law." However, this argument does not find support in the record. Instead of weighing the ultimate sentence imposed with other permissible factors, the trial court

---

[12]    However, even assuming defendant is eligible for youth offender parole, the trial court sentenced him to two indeterminate terms of 25 years to life, which would require him to serve a *minimum* of 25 years before being entitled to a hearing to determine his parole eligibility. (§ 3051, subd. (b)(3) ["A person who was convicted of a controlling offense that was committed when the person was 25 years of age or younger and for which the sentence is a life term of 25 years to life shall be eligible for release on parole at a youth offender parole hearing during the person's 25th year of incarceration. The youth parole eligible date for a person eligible for a youth offender parole hearing under this paragraph shall be the first day of the person's 25th year of incarceration."].)

[13]    The cases cited are as follows:  *People v. Zichwic* (2001) 94 Cal.App.4th 944, 960; *People v. Myers* (1999) 69 Cal.App.4th 305, 310; *People v. Kelley* (1997) 52 Cal.App.4th 568, 582; *People v. Mack* (1986) 178 Cal.App.3d 1026, 1032–1033.

denied the *Romero* motion "irrespective of the ultimate sentence that one might receive given the Court's ultimate ruling," which as noted above was improper. (*Garcia, supra*, 20 Cal.4th at pp. 500, 501–502.)

### vi. The Trial Court Must Reconsider All Mitigating Circumstances

On remand, the trial court must reconsider *all* relevant mitigating factors, apart from the factors mentioned above, before resentencing defendant. (See *Dix v. Superior Court* (1991) 53 Cal.3d 442, 460 ["[I]t is well settled that when a case is remanded for resentencing after an appeal, the defendant is entitled to 'all the normal rights and procedures available at his original sentencing' [citations], including consideration of any pertinent circumstances which have arisen since the prior sentence was imposed [citation]."].) This includes a redetermination on whether a mental health expert should be appointed to evaluate defendant's mental and developmental issues, which may have resulted in or affected him when committing the qualifying strike offenses.[14] (See *Dryden, supra*, 60 Cal.App.5th at p. 1031 [circumstances relevant to a defendant's *Romero* motion included his "'mental health issues, and alcoholism [which] most likely contributed to his actions'"].) Further, it appears trial counsel requested a *Franklin* hearing, and the trial court subsequently set a status conference date for April 7, 2021. However, the record is silent as to whether a *Franklin* hearing was ever conducted. In the

---

[14] Prior to sentencing, defendant made an ex parte motion for appointment of an expert, specifically Dr. Haddock, and $1,500 to cover the costs of the report, in support of his *Romero* motion and a possible *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*) hearing. Previously, Judge K. Dulcich ordered that Dr. Haddock assist trial counsel in preparation of a possible not guilty by reason of insanity defense and a report pursuant to section 1001.36. This report was not included in the record. As to defendant's motion, the trial court denied the request and stated in a note:

> "Rejected. The request and declaration does not make clear why Dr. Haddock is needed for a [section] 1001.36 or *Romero* motion. It is possible that it may be helpful in a *Franklin* hearing, but still not clear exactly what defense wants Dr. Haddock to do. If you resubmit the request, please indicate the cost of review for *Franklin* hearing only, along with more information re: application to *Franklin* hearing."

19.

event a *Franklin* was never held, we encourage the trial court to conduct a hearing at or near the time of defendant's resentencing date.

As a juvenile and young adult, defendant has made bad choices for which he will be held criminally accountable. However, a 60-year-to-life sentence equates to a life in prison for offenses which, while serious, were not egregious on the spectrum of robbery offenses and did not result in material injuries, if any. Without properly taking his age and other factors into consideration, the trial court impermissibly denied defendant of the opportunity to alter his behavior and rehabilitate and condemned him to what is essentially a life sentence without the possibility of parole.

Accordingly, no reasonable person could agree the sentence imposed was just. (See *Carmony, supra*, 33 Cal.4th at p. 378.) Defendant's prior strike offenses occurred when he was of diminished culpability based on his age, a factor the trial court simply glossed over. Further, despite the trial court's characterization of the facts of this case, defendant's offenses were not particularly egregious, especially when considering the spectrum of robbery type offenses. Lastly, and most importantly, the trial court ignored its most fundamental legal obligation by neglecting to consider the ultimate sentence before denying the *Romero* motion. We therefore conclude the trial court abused its discretion in denying defendant's *Romero* motion.[15]

---

[15]    During oral argument, defendant argued to recuse the sentencing judge and direct the Kern County Superior Court to appoint a new judge on remand. This request is denied. (See (*People v. Superior Court* (*Dorsey*) (1996) 50 Cal.App.4th 1216, 1231 ["[M]ere judicial error is not conclusive evidence of bias or grounds for disqualification, and this has been held particularly true in cases of sentencing error, given the often-complex rules relating to the subject."].) This provides the sentencing judge an opportunity to revisit and resentence defendant consistent with the concerns outlined in this opinion.

**III.    The Trial Court Should Have Stayed the Sentences Imposed on the Brandishing Convictions in Counts 3 and 4 Pursuant to Section 654**

Defendant further contends the trial court erred by not staying the sentences imposed on the brandishing convictions in counts 3 and 4 because his "conduct constituted a 'single physical act' for purposes of section 654 .…" The People concede error. We accept the People's concession and therefore stay defendant's sentences on counts 3 and 4 pursuant to section 654.

**A.    Applicable Law**

"[S]ection 654 precludes multiple punishment when a criminal act … violates multiple penal provisions." (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1466.) "Section 654 precludes multiple punishment for a single act or omission, or an indivisible course of conduct. [Citation.] If, for example, a defendant suffers two convictions, punishment for one of which is precluded by section 654, that section requires the sentence for one conviction to be imposed, and the other imposed and then stayed. [Citation.] Section 654 does not allow any multiple punishment, including either concurrent or consecutive sentences." (*People v. Deloza* (1998) 18 Cal.4th 585, 591–592.)

**B.    Analysis**

Here, the record establishes defendant flashed the imitation rifle at both Ana and John and then demanded their money. The record does not provide any other showing of force or fear underlying defendant's second degree robbery (count 1) and his attempted second degree robbery (count 2). This is further corroborated by the prosecutor's statements in his closing argument where he argued defendant exhibited force or fear by flashing the imitation firearm. Accordingly, defendant's sentences under counts 3 and 4 should have been stayed pursuant to section 654.

## **DISPOSITION**

The sentence is vacated, and the matter is remanded for resentencing with the direction to the trial court to reconsider defendant's sentence in light of the views expressed in this opinion.  Further, the trial court is directed to stay defendant's sentences on counts 3 and 4 pursuant to section 654.  In all other respects, the judgment is affirmed.


MEEHAN, J.

WE CONCUR:


LEVY, Acting P. J.


FRANSON, J.